NOT RECOMMENDED FOR PUBLICATION
File Name: 21a0349n.06
No. 20-1660

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

FILED
Jul 19, 2021
DEBORAH S. HUNT, Clerk

|  |  |  |
|---|---|---|
| JOSEPH P. STANISLAW, et al., | ) | |
| | ) | |
| Plaintiffs-Appellants, | ) | |
| | ) | |
| v. | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| THETFORD TOWNSHIP, MICHIGAN, et al., | ) | COURT FOR THE EASTERN |
| | ) | DISTRICT OF MICHIGAN |
| Defendants-Appellees. | ) | |
| | ) | |
| | ) | |

BEFORE:    MOORE, ROGERS, and READLER, Circuit Judges.

ROGERS, Circuit Judge.  Joseph and Larraine Stanislaw owned a used-car dealership in Thetford Township, Michigan.  In 2005, they sought local approval to renew their dealership licenses pursuant to Michigan law.  The Township denied their application for failure to comply with local ordinances.  In response, in 2009 the Stanislaws filed suit against the Township in federal court, resulting in a summary judgment determination in favor of the defendants on all counts, which we upheld on appeal in 2013.  After that first case was filed, the Stanislaws again applied for renewal of their dealership license, only to be denied by the Township once again. Following another series of local zoning board and state court appeals, the Stanislaws brought this action in 2017 against the Township and various local officials, alleging, inter alia, a claim for equal protection under a "class-of-one" theory.  The district court granted judgment on the pleadings in favor of the defendants, holding that the Stanislaws' equal protection claim was barred by res judicata and collateral estoppel based on their unsuccessful 2009 suit, and dismissed the

1

remaining dependent claims.  But this action is based on new, material facts related to allegedly unlawful conduct that occurred after the filing of the 2009 suit and could not have been litigated in the prior proceeding.  The district court's judgment on the equal protection claim and subsequent dismissal of dependent claims were accordingly not proper, and remand is warranted.  In the alternative, the district court *sua sponte* held that judgment on the pleadings was appropriate because the Stanislaws had failed to state an equal protection claim on which relief could be granted.  But the defendants did not argue the point below, and the district court gave the Stanislaws no notice of the defect or any opportunity to respond or amend the complaint.  We do not address the merits of this alternative ground, which the district court may consider on remand with an appropriate chance for the Stanislaws to address it.

## I.

### A.  *Stanislaw I*

Joseph and Larraine Stanislaw, husband and wife, owned and operated a car dealership for over two decades in Thetford Township, Michigan.  They purchased the property in May 1983.  On several occasions, the "Township received complaints from neighbors about the Stanislaws' lot not conforming with local zoning ordinances."  *Stanislaw v. Thetford Twp.*, 515 F. App'x 501, 502 (6th Cir. 2013).  In response, a fence was drawn into the property site plan, and the Stanislaws were permitted to sell cars and store equipment within an enclosed area.

In 2004, Michigan passed a law requiring that all used vehicle dealers seeking to renew their licenses must obtain written verification from the appropriate local governing authority that the business meets all "applicable municipal and zoning requirements."  Mich. Comp. Laws § 257.248.  When the Stanislaws sought to renew their dealership licenses in 2005, they submitted municipal and zoning approval forms to the Township pursuant to the new state law.  In December

2005, Marc Angus, the Building Inspector for Thetford Township, declined to approve the forms after conducting an inspection of the property. He provided three reasons for his decision: a fence was required for outside storage, the partial fence on the property was in disrepair, and the dealership was operating an auto graveyard, for which it was not zoned. After multiple discussions between the Stanislaws and various Township officials, the Township's then-Supervisor Luther Hatchett declined to sign the renewal forms. Angus's denial was accepted by the Township's Zoning Board of Appeals ("ZBA") and Planning Commission.

Following the denial of their forms, the Stanislaws brought suit in federal district court in January 2009, alleging violations of: (1) procedural due process, (2) substantive due process, (3) equal protection, and (4) the Fifth Amendment's Takings Clause. The complaint also included a municipal liability claim against the Township. The Stanislaws named Thetford Township and various Township officials as defendants, including Hatchett, Angus, and Thomas Kulcher, individually and in their official capacities. In October 2010, the district court granted summary judgment in favor of the defendants on all counts and dismissed the case. The Stanislaws appealed, and we affirmed the district court judgment on all counts. *Stanislaw*, 515 F. App'x at 503.

**B.** *Stanislaw II*

After the district court granted summary judgment to the defendants, the Stanislaws resubmitted their zoning and municipal approval forms to Angus in December 2010. In early 2011, Angus again denied the forms, writing that the municipal disapproval was "for the same reason set forth in the December 12, 2005 disapproval." Angus did not provide a reason for his disapproval of the zoning form, and the Stanislaws note that Angus "did not reference any zoning ordinance provision to support his determination." The Stanislaws made a series of appeals to the Township ZBA and Genesee County Circuit Court challenging Angus's decision, all to no avail.

In October 2013, the Stanislaws agreed to remove all used vehicles from their property in exchange for the Township's agreement not to prosecute blight charges against them. During an inspection to ensure compliance with the agreement, former Township building inspector Stuart Worthing, who was also a member of the Planning Commission, told the Stanislaws that they needed fencing along the property line because their property adjoined "residential districts," a claim that the Stanislaws dispute.

In May 2015, the Stanislaws appeared before the Planning Commission to determine the fencing requirements for their property. During the proceeding, Planning Commission member Dennis Bloss told the Stanislaws that Ordinance No. 78 prevented them from both operating a business and maintaining a residence on the same property. After receiving the same guidance from Worthing in May 2016, the Stanislaws appealed Worthing's determination to the ZBA. The ZBA, which Bloss also chaired, upheld Bloss's and Worthing's instructions as valid. The Stanislaws appealed the ZBA's decision to the Genesee County Circuit Court, and the court remanded the case to the Township with instructions that the Stanislaws "submit any request concerning their property to the appropriate Township official for further review and decision."

The Stanislaws appeared before the Planning Commission again in July 2017, seeking to clarify which specific section of Ordinance No. 78 prohibited them from operating a business and maintaining a residence on the same parcel of property. At this appearance, Bloss reiterated that the Stanislaws could not have a business and residence on the same commercial property, but he could not point to the relevant section of Ordinance No. 78 that supported the prohibition. The Stanislaws again appealed to the ZBA in August 2017, and the ZBA ultimately decided to interpret Ordinance No. 78 in a way that would allow the Stanislaws to use their property for both commercial and residential purposes, assuming they complied with certain unstated conditions.

The Stanislaws subsequently filed this suit in the Genesee County Circuit Court on April 2, 2018, against Thetford Township and various current and former Township officials, including Angus, Hatchett, Bloss, Worthing, and Robert Swartwood (the Township attorney), all in their individual and official capacities. Defendants timely removed to the Eastern District Court of Michigan. The Stanislaws allege four claims: (1) inverse condemnation under the Michigan Constitution, (2) an equal protection violation under the Fourteenth Amendment, (3) failure to intervene, and (4) municipal liability against the Township.

On June 23, 2020, the district court granted defendants' Federal Rule of Civil Procedure 12(c) motion for judgment on the pleadings on the equal protection claim, dismissed the 42 U.S.C. § 1983 claims for lack of any constitutional violation, and remanded the inverse condemnation claim back to the Michigan state court. The district court held that res judicata barred the Stanislaws' equal protection claim against the defendants named in *Stanislaw I*: Thetford Township, Hatchett, and Angus. The court held that claim preclusion barred the equal protection claim in this suit because the factual allegations concerning the class-of-one theory were either identical to those in *Stanislaw I* or were such that they could have been raised in the first action. The court further held that collateral estoppel barred the equal protection claim against Worthing and Bloss, again because the class-of-one issues were the same as those raised and litigated in *Stanislaw I*. In the alternative, the district court determined *sua sponte* that dismissal was proper because the complaint had failed to state an equal protection claim on which relief could be granted. In the absence of a valid constitutional violation, the court dismissed the municipal liability and failure to intervene claims. Finally, because all claims over which the court had federal question jurisdiction were dismissed, the court declined to exercise supplemental

jurisdiction over the remaining state law inverse condemnation claim, remanding it back to the Genesee County Circuit Court. This appeal timely followed.

## II.

Judgment on the pleadings on the equal protection claim was not properly based on res judicata and collateral estoppel. These doctrines do not apply where a subsequent claim, based on new material facts, contains allegations of ongoing unlawful conduct that could not have been litigated in the prior proceeding. The district court's alternative, independent basis for dismissal—failure to state a claim—was premature because the Stanislaws had no notice of the defect in their pleadings and had no opportunity to respond or amend the complaint.

### A. Res Judicata (Claim Preclusion)

Contrary to the conclusion of the district court, res judicata does not bar the Stanislaws' equal protection claim against Thetford Township, Angus, and Hatchett. Although it is true that the same type of action (denial of the Stanislaws' forms) was the basis for the same type of equal protection claim (under a class-of-one theory) in both proceedings, the similarity largely ends there. The Stanislaws' claim here arises from a different set of facts that were not yet in existence at the time the first suit was filed, namely—Angus's denial of the forms in 2011 and the subsequent decisions from the Township Planning Commission and ZBA.

Res judicata (also referred to as "claim preclusion") precludes a claim raised in a subsequent proceeding where there is: "(1) a final decision on the merits by a court of competent jurisdiction; (2) a subsequent action between the parties or their privies; (3) an issue in the subsequent action which was litigated or which should have been litigated in the prior action; and (4) an identity of the causes of action." *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 577-78 (6th Cir. 2008) (internal citations omitted). Plaintiffs do not contest the first two parts of

this test on appeal, but argue that defendants have failed to establish the third and fourth elements. Upon *de novo* review, neither element is met here. *Hayward v. Cleveland Clinic Found.*, 759 F.3d 601, 607-08 (6th Cir. 2014) (stating scope of review).

First, defendants have failed to establish that the equal protection claim in this case was actually litigated in the prior suit. The Stanislaws' claim is based on distinct events that occurred after the complaint in *Stanislaw I* was filed. In that first action, Angus's 2005 denial of the Stanislaws' municipality and zoning forms was based on the lack of fencing, the partial fence being in a state of disrepair, and the operation of an "auto graveyard." The Planning Commission and ZBA accepted this reasoning, and plaintiffs filed suit alleging that disapproval on these grounds meant that they were being subjected to disparate treatment. No additional reasoning was offered by the Township for why the Stanislaws were not eligible for municipal or zoning approval.

The factual allegations in the complaint demonstrate that the equal protection claim here is materially distinct from the claim that was pled in *Stanislaw I*, because this claim arises from the Township's shifting justifications proffered after 2009 for why the Stanislaws could not operate their dealership business on their property. These facts undergirding the equal protection claim did not arise until well after the complaint in *Stanislaw I* was filed; therefore these allegations were not and could not have been considered in the previous suit. In Angus's 2011 denial, he wrote that the municipal approval form was denied "for the same reason set forth in the December 12, 2005 disapproval," but did not cite any local ordinance as a basis for the decision. At first blush, this would suggest that the underlying conduct that the Stanislaws allege to have been unconstitutional is the same across both cases, because the 2011 denial was for the same reason as the 2005 denial. However, the complaint here alleges that the Township's justification for denying the Stanislaws' forms shifted in later proceedings before the Planning Commission and ZBA. It is these later

justifications, applied in an allegedly discriminatory manner to the Stanislaws, that form the basis for the Stanislaws' equal protection claim in this case.

For example, after a series of fruitless appeals from Angus's 2011 denial, the Stanislaws allegedly learned from Worthing in 2013 that their property line needed fencing because their property adjoins "residential districts." The complaint alleges another novel justification came in 2015 at a Planning Commission meeting, where Bloss told the Stanislaws that they could not maintain a residence and formal business on the same piece of land that was zoned for commercial use. Worthing allegedly reiterated Bloss's position in a private meeting with the Stanislaws in 2016 and further stated that, pursuant to local ordinances, a fence—or "buffer"—was required if the Stanislaws used their property for any commercial purpose, because adjacent properties were being used as residences. These statements from Bloss and Worthing presented not only a new explanation for why fencing was necessary, but also a new reason why the Stanislaws could not operate their business on their property. Finally, in 2017 the ZBA relented, reversed its long-held position, and interpreted the local ordinances in a way that would permit the Stanislaws to maintain a residence and operate their business on the same property, subject to certain unstated conditions. These factual allegations were incorporated into the Stanislaws' equal protection claim, and the complaint can be read to allege that the Township applied these shifting explanations in a discriminatory fashion to prohibit only the Stanislaws (and not other similarly situated entities) from operating their business. Each of these events occurred years after the events of *Stanislaw I*, and therefore could not have been litigated in the prior proceeding.

These factual developments preclude the applicability of res judicata in this case. Res judicata is not applicable where a subsequent lawsuit alleges ongoing unlawful conduct, even if it is of the same nature as the conduct giving rise to the prior action, so long as the events giving rise

to the subsequent action occurred after the first action was filed. *Lawlor v. Nat'l Screen Serv. Corp.*, 349 U.S. 322, 324, 327-28 (1955). In *Lawlor*, the Supreme Court held that res judicata did not preclude a subsequent antitrust claim brought seven years after a prior suit between the parties had been settled, even though both suits "involved essentially the same course of wrongful conduct," because a continuous course of misconduct "may frequently give rise to more than a single cause of action." *Id.* at 327-28. Similarly, the complaint here alleges an equal protection cause of action based on allegations of wrongful conduct that occurred after 2009. Defendants argue that *Lawlor* applies only to collateral estoppel, but the Supreme Court's holding concerned the extent to which the earlier judgment "extinguish[ed] claims" that did not "exist" and "could not possibly have been sued upon in the previous case." *Id.* at 326-28. Our cases have similarly held that res judicata cannot bar a subsequent suit alleging new misconduct. *See, e.g.*, *Rawe v. Liberty Mut. Fire Ins. Co.*, 462 F.3d 521, 529 (6th Cir. 2006); *Cellar Door Prods., Inc. v. Kay*, 897 F.2d 1375, 1376-78 (6th Cir. 1990).

The Supreme Court applied the *Lawlor* principle more recently in *Whole Woman's Health v. Hellerstedt*, 136 S. Ct. 2292, 2305-07 (2016), where the Court held that a prior facial attack to an abortion statute did not, under claim preclusion, bar a subsequent as-applied challenge predicated on new material events postdating the filing of the initial complaint. The Court observed that "development of new material facts can mean that a new case and an otherwise similar previous case do not present the same claim." *Id.* at 2305 (citing Restatement (Second) of Judgments § 24 (1980)). Contrary to the defendants' assertions, *Hellerstedt* did not rest on the difference between facial and as-applied challenges, but instead turned on the presence of new material facts in the second action. *See id.* at 2306 (observing that "[c]hanged circumstances . . . are why the [earlier] claim . . . is not the same claim as petitioners' claim here.").

Application of claim preclusion in this case would potentially immunize the Township from liability for future discriminatory acts against the Stanislaws. To the extent the complaint alleges that new discriminatory tactics and justifications were used in denying the Stanislaws' renewal application, they are entitled to litigate those allegations.

The district court concluded below that, based on the complaint's reference to events "since December 2005" and the lack of a "timeline" of "dissimilar treatment," the facts about four allegedly similar businesses named in the complaint existed during *Stanislaw I* and therefore should have been raised at the time of the first action. However, the equal-protection claim here applies to the Township's conduct post-2009. For example, based on Worthing's 2013 statement that fencing was necessary because the Stanislaws' property was adjacent to residential properties, a similarly situated business in the General Commercial District could be one that operates next to residential property but that is not required to have fencing. Under *Lawlor* and *Hellerstedt*, if the new factual developments gave rise to an equal protection cause of action here, the new claim is not barred by res judicata.

Furthermore, it is not dispositive that the equal protection count mentions only the year 2005. We "consider conduct alleged throughout the entire Amended Complaint—regardless of what count it appears in—when evaluating Plaintiffs' claims." *Cahoo v. SAS Analytics Inc.*, 912 F.3d 887, 895 n.3 (6th Cir. 2019). The complaint alleges that defendants engaged in wrongful conduct by not approving the Stanislaws' forms in 2011 and maintaining that denial for years, all while failing to cite the specific section of the local ordinances that formed the basis for all of those decisions.

The reference in the complaint to events occurring between 2005 and 2009 does not undermine this conclusion. Considering the complaint as a whole, the equal protection cause of

action relates to the 2011 denial of their forms and subsequent Planning Commission and ZBA decisions. The allegations concerning events from 2005 to 2009 may inform the allegations of a pattern of discriminatory treatment regarding post-2009 misconduct in this case. For instance, in *Bronson v. Board of Education*, 687 F.2d 836, 841 (6th Cir. 1982), an intentional school segregation case where collateral estoppel applied to issues relating to conduct prior to 1965, we "recognize[d] the right to proceed on a claim of post-July 26, 1965 intentional segregation and directed that evidence of events and practices which occurred prior to that date are admissible if relevant to the post-1965 inquiry." Although that case considered collateral estoppel, the same principle holds true here. Interpreting the complaint in a light most favorable to the Stanislaws as we must, *see Engler v. Arnold*, 862 F.3d 571, 574-75 (6th Cir. 2017), means that, while they cannot relitigate any claims or issues solely based on the events of 2005 to 2009, those allegations can inform the post-2009 equal protection claim if relevant. Accordingly, the mention of alleged misconduct occurring "since 2005" does not compel the application of res judicata.

For the same reasons, defendants also failed to establish the fourth prong for res judicata. There is no identity between the two equal protection causes of action. The claim here is based on different facts and evidence that were not considered in the previous suit. "Identity of causes of action means an 'identity of the facts creating the right of action and of the evidence necessary to sustain each action.'" *Sanders Confectionery Prod., Inc. v. Heller Fin., Inc.*, 973 F.2d 474, 484 (6th Cir. 1992) (quoting *Westwood Chemical Co. v. Kulick*, 656 F.2d 1224, 1227 (6th Cir. 1981)). "The now-accepted test in preclusion law for determining whether two suits involve the same claim or cause of action depends on factual overlap, barring claims arising from the same transaction." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 316 (2011) (citation omitted). Plaintiffs' claim alleges years of discriminatory conduct based on new facts and

Township decisions that arose only after the prior proceeding had been filed and resolved. These factual differences show that there is no identity between the two causes of action.

To be sure, the fourth element of claim preclusion may be satisfied "if the claims arose out of the same transaction or series of transactions . . . or the same core of operative facts." *Browning v. Levy*, 283 F.3d 761, 773-774 (6th Cir. 2002) (internal quotation marks and citation omitted). Defendants assert that the cause of action here arose from the same series of transactions as *Stanislaw I* because both cases stem from the Stanislaws' ongoing efforts to get their renewal forms approved. However, the string of Planning Commission and ZBA decisions involving novel reasons why the Stanislaws could not operate their business on their property can fairly be read to amount to a new series of transactions that began once the Stanislaws attempted to ascertain the scope of Ordinance No. 78 and the Township's fencing requirements. Generally, claim preclusion can extend only to successive acts or events "occurring over a period of time [that] were substantially of the same sort and similarly motivated." *Restatement (Second) of Judgments* § 24 cmt. d (1982).

Moreover, the Stanislaws did not concede the fourth element by stating at the beginning of the complaint that: "[o]ne civil action between these parties or other parties arising out of the transaction or occurrence alleged in the complaint has previously been filed in the United States District Court for the Eastern District of Michigan." The Stanislaws contend that this statement was simply a required disclosure under Michigan Court Rule 1.109(D)(2)(a). The language in the complaint matches the required disclosure in the rule. The rule, however, requires that cases arising out of the same transaction or occurrence be assigned to the same judge who presided over the initial action. The disclosure serves to facilitate case management and prevent forum-

shopping, not to force parties to concede that their claim is barred under res judicata. The parties cited no instances where this rule has been used for the purposes of establishing claim preclusion.

Thus, because the defendants failed to establish the third and fourth elements for res judicata, the Stanislaws are not precluded from asserting their equal protection claim against Thetford Township, Angus, and Hatchett.

### B. Collateral estoppel

For substantially the same reasons, collateral estoppel (also referred to as "issue preclusion") does not apply to bar the Stanislaws' equal protection claim against Bloss and Worthing. The Stanislaws' complaint raises new issues that were not raised or litigated before and could not have been litigated in *Stanislaw I*. Defendants must prove four elements to establish collateral estoppel: "(1) the precise issue must have been raised and actually litigated in the prior proceedings; (2) the determination of the issue must have been necessary to the outcome of the prior proceedings; (3) the prior proceedings must have resulted in a final judgment on the merits; and (4) the party against whom estoppel is sought must have had a full and fair opportunity to litigate the issue in the prior proceeding." *Georgia-Pac. Consumer Prod. LP v. Four-U-Packaging, Inc.*, 701 F.3d 1093, 1098 (6th Cir. 2012) (citations omitted). The Stanislaws contest only the first and fourth elements on appeal.

Based on the analysis above, defendants have failed to establish the first element. The precise issues in this case were not raised and actually litigated in *Stanislaw I*. Collateral estoppel applies only to issues that existed (and were actually litigated and decided) at the time of the initial suit. *See Pfeil v. State St. Bank & Tr. Co.*, 671 F.3d 585, 601 (6th Cir. 2012), abrogated on other grounds by *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409 (2014). *See also Bronson*, 687 F.2d at 841. In *Pfeil*, we held that this element was not met where the events giving rise to the

plaintiff's subsequent suit occurred "several months after" the prior proceeding. *Pfeil*, 671 F.3d at 601. While it is true that the Stanislaws have been applying for the same zoning and municipal approvals since 2005, the basis for the equal protection issues here are the separate and discrete events that occurred after 2009.

Moreover, the alleged comparator class for the class-of-one claim is different here. In *Stanislaw I*, the alleged comparator class was any "automobile dealers located within the General Commercial District." However, plaintiffs contend that because the Township prohibited the operation of any business on their property, the alleged comparator class is broader, encompassing all businesses operating in the General Commercial District that maintained a residence on the same parcel of land after February 22, 2011. The issue of whether any of the local businesses fell within this comparator class during the relevant time period was never raised and litigated, and therefore it cannot be precluded by the earlier litigation. This argument cannot be dismissed simply by characterizing it as an impermissible attempt to change the theory of the case. The fact that the complaint lists several "automobile dealerships and/or repair facilities" as similarly situated businesses does not mean that the Stanislaws have conceded that *only* those businesses fall under the comparator class. In any event, the issue of whether the newly named automobile dealership businesses in the complaint are similarly situated to the Stanislaws' business was not raised or litigated in the prior proceeding. Thus, because the equal protection issues here are based on new developments occurring after *Stanislaw I*, the Stanislaws did not actually litigate these issues in the first case.

We do not rely, however, on the Stanislaws' fourth-prong contention that they were deprived a "full and fair opportunity to litigate the issues . . . because the alleged constitutional violations had not yet taken place in 2009." This argument conflates the first element with the

fourth. The fourth collateral estoppel prong is procedural, *Kremer v. Chem. Const. Corp.*, 456 U.S. 461, 483 n.24 (1982), and the Stanislaws present no allegations that the district court's grant of judgment on the pleadings was a violation of their procedural rights. In short, because defendants failed to establish the first element, collateral estoppel cannot apply here to preclude the equal protection claim against Bloss and Worthing.

## C. Failure to State a Claim

Although the district court could not properly rely on claim preclusion or issue preclusion to dismiss in this case, we recognize the general similarity of the claims, issues, and parties in the two suits. It is thus perhaps not surprising that the district court would rule independently in the alternative that the plaintiffs again have failed to state a class-of-one equal protection claim. We do not affirm on that alternative ground. It is true that plaintiffs "must overcome a 'heavy burden' to prevail based on the class-of-one theory." *Loesel v. City of Frankenmuth*, 692 F.3d 452, 462 (6th Cir. 2012) (citing *TriHealth, Inc. v. Bd. of Comm'rs, Hamilton Cnty., Ohio*, 430 F.3d 783, 791 (6th Cir. 2005)). "Unless carefully circumscribed, the concept of a class-of-one equal protection claim could effectively provide a federal cause of action for review of almost every executive and administrative decision made by state actors." *Loesel*, 692 F.3d at 462 (quoting *Jennings v. City of Stillwater*, 383 F.3d 1199, 1210-11 (10th Cir. 2004)). But plaintiffs are entitled to full and fair consideration by the district court of plaintiffs' arguments and properly submitted materials in opposition to dismissal on this ground.

Plaintiffs were not given a proper chance below to respond to the district court's alternative reasoning. The court held that dismissal of the equal protection claim was appropriate even if the claim was not subject to preclusion because the complaint contained "only conclusory allegations" and therefore failed "to state a claim upon which relief can be granted." But defendants never

raised this argument below, and it was error to rule on this basis without giving the Stanislaws notice of the defect in their pleadings and a chance to respond or request amendment of their complaint.

Below, the only cause of action that defendants argued was not plausibly stated under Federal Rule of Civil Procedure 8 was the failure to intervene claim. Consequently, in their response to defendants' motion, that was the only claim the Stanislaws defended as being sufficiently pled in the complaint. Dismissal for failure to state a claim without providing plaintiff adequate notice of the deficiency in the complaint generally warrants reversal. *See, e.g.*, *Morrison v. Tomano*, 755 F.2d 515, 517 (6th Cir. 1985); *Chase Bank USA, N.A. v. City of Cleveland*, 695 F.3d 548, 558 (6th Cir. 2012). In *Morrison*, we reversed a lower court's dismissal for failure to state a claim because "the district court should not have dismissed the case without affording plaintiffs some opportunity to address the perceived shortcomings in the complaint." 755 F.2d at 517.

In a written response to the court's inquiry at oral argument regarding support for the propriety of our affirming a Rule 12(b)(6) dismissal on grounds not raised by the movant below, defendants rely on *Waad v. Farmers Ins. Exchange*, 762 F. App'x 256, 260 (6th Cir. 2019). Even apart from the fact that the precedent is not published, that case is different from this case in several ways. First, the *Waad* plaintiffs did not challenge the propriety of the district court's *sua sponte* dismissal on the basis of lack of notice, which is at the core of our precedent disapproving such dismissals. *See, e.g.*, *Morrison*, 755 F.2d at 516-17; *Chase Bank*, 695 F.3d at 558. In *Shelton v. United States*, 800 F.2d 292, 295 (6th Cir. 2015), we reversed a *sua sponte* denial of a motion to vacate a sentence on lack of notice grounds, stating "[t]he government adds that any error was harmless because Shelton has had an opportunity to present his timeliness arguments on appeal.

That opportunity, however, does not cure the lack of notice before the district court." Second, the *Waad* decision was partly based on the fact that the plaintiffs in that case had never petitioned for leave to amend their complaint or to move for reconsideration. The Stanislaws could not seek amendment because the district court's judgment was a final order, and they would have first had to move to reopen the case under Federal Rules of Civil Procedure 59 or 60 before they could seek leave to amend the complaint. See *Morse v. McWhorter*, 290 F.3d 795, 799 (6th Cir. 2002). In addition, the Stanislaws had no obligation to file a motion to reconsider before seeking an appeal, because they were entitled to raise the issue on appeal instead. *Howe v. City of Akron*, 801 F.3d 718, 750 (6th Cir. 2015). In any event, choosing not to file a motion to reconsider does not cure a notice defect. *Shelton*, 800 F.3d at 295.

### D. Dependent and Pendent Claims

Because judgment on the equal protection claim was improper, dismissal of the remaining federal claims was also inappropriate. The district court held that because their constitutional claim failed, the Stanislaws' 42 U.S.C. § 1983 claims alleging failure to intervene and municipal liability necessarily failed as well. Because we do not uphold dismissal of the constitutional claim, the sole basis for dismissal of the dependent § 1983 claims, the dismissal of those claims must be remanded as well. See *Hicks v. Scott*, 958 F.3d 421, 440 (6th Cir. 2020); *Woodcock v. City of Bowling Green*, 679 F. App'x 419, 425 (6th Cir. 2017). It is also necessary to reverse and remand the district court's order declining to exercise supplemental jurisdiction, where that decision rested at least in part on the fact that all of plaintiffs' federal law claims were dismissed. Because the court will have the federal claims before it once again, remanding the state claims to the district court is appropriate to allow that court "to determine whether to exercise supplemental jurisdiction

in light of this change in circumstances." *Bishop v. Children's Ctr. for Developmental Enrichment*, 618 F.3d 533, 539 (6th Cir. 2010).

Finally, defendants' request to dismiss Hatchett from this case is best suited for adjudication by the district court on remand. The district court can determine whether Hatchett is entitled to judgment on any claims in light of this decision.

## III.

The judgment of the district court is reversed and remanded for proceedings consistent with this opinion.